UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KIM DUCOTE, ) | |
| on behalf of L.D., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-68-PLR-CCS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Kim Ducote, on behalf of minor L.D., ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On August 12, 2011, the Plaintiff applied for supplemental security income ("SSI") under the Social Security Act on behalf of L.D., a child under the age of 18. [Tr. 93]. The application alleged disability since May 1, 2011. [Id.]. After the application was denied initially and upon reconsideration [Tr. 48, 53], the Plaintiff requested a hearing [Tr. 59]. On April 25, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 29-44]. On August 28, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 8-28]. The Appeals

1

Council denied the Plaintiff's request for review [Tr. 1-3]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on February 13, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant was born on January 28, 2000. Therefore, he was a school-age child on August 12, 2011, the date application was filed, and is currently a school-age child (20 CFR 416.926(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since August 12, 2011, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder and Asperger's disorder (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.921, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listing (20 CFR 416.924(d) and 416.926(a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since August 12, 2011, the date the application was filed (20 CFR 416.924(a)).

[Tr. 14-24].

## II. DISABILITY ELIGIBILITY FOR A CHILD

To qualify for SSI benefits as a child, the child must be under the age of 18 and prove that he or she has a "medically determinable physical or mental impairment, which results in marked or severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

A child's disability claim is assessed pursuant to a three-step sequential evaluation. 20 C.F.R. § 416.924(a). At step one, the child must not be engaged in "substantial gainful activity." Id. At step two, the child must "have an impairment or combination of impairments that is severe." Id. At step three, the child's impairment or combination of impairments must "meet," "medically equal," or "functionally equal" one of the medical listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 416.924(a), (d).

A child "meets" a medical listing when his or her impairment satisfies all of the criteria of a particular listing. § 416.925(c)(3). To "medically equal" a listing, a child's impairment must be "medically equivalent to a listed impairment." § 416.926(a). That is, the child's impairment or combination of impairments is of "equal medical significance to the required criteria." § 416.926(b)(1)(ii). To "functionally equal" a listing, the child's impairment "must be of listing-level severity." § 416.926a(a). "Listing-level severity" means that within the six domains of functioning—(1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being—the child has either "marked" limitations in two of the domains or "extreme" limitation in one of the domains. § 416.926a(b)(1). "These domains are broad areas of functioning intended to capture all of what a

3

child can or cannot do." Id. The relevant factors for assessing a child's functional limitations in each domain includes: (1) how well the child can initiate and sustain activities, whether the child requires extra help, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effect medication or other treatment has on the child. § 416.926a(a)(1)—(3).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v.

4

Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.   POSITIONS OF THE PARTIES**

The Plaintiff contends that the ALJ failed to properly weigh the opinion of treating psychologist, Katherine Dittman, Ph.D. [Doc. 15 at 7]. The record contains two letters from Dr. Dittman, which Plaintiff argues were erroneously ignored by the ALJ. [Id. at 6]. In this regard, the Plaintiff argues that the ALJ failed to address the specific findings opined in the letters and further failed to assign a specific weight to the letters. [Id. at 6]. The ALJ's treatment of these letters, according to the Plaintiff, violates the treating physician rule and warrants a remand for further adjudication. [Id.].

The Commissioner responds that Dr. Dittman's letters were not entitled to any significant weight for several reasons. [Doc. 19 at 5-10]. First, the Commissioner states that the letters were not accompanied by any supporting medical records, thereby providing no more than vague

5

statements about the Plaintiff that the ALJ could not have credited. [Id. at 6]. Second, the Commissioner argues that the letters do not constitute a "medical opinion" pursuant to Agency regulations because the letters only provide vague general descriptions rather than pertinent information about the nature and severity of the Plaintiff's impairment. [Id. at 6-7]. To the extent that the Court would find Dr. Dittman's letters constitute medical opinions, the Commissioner submits that the ALJ's failure to assign the letters a specific weight was harmless. [Id. at 7-10]

## V.   ANALYSIS

Dr. Dittman provided individual therapy to the Plaintiff beginning in July 2012. [Tr. 458]. The record contains only two letters from her, with each letter documenting the Plaintiff's mental impairments, symptoms, and the impact the symptoms have on the Plaintiff's level of functioning. [Tr. 458, 468]. During the administrative hearing, counsel for Plaintiff explained that Dr. Dittman declined to send any of her records and submitted the letters instead. [Tr. 32].

At the time of the first letter, which is dated September 10, 2012, Dr. Dittman had met with the Plaintiff twice and opined that the Plaintiff had symptoms consistent with an autism spectrum disorder, attention-deficit/hyperactivity disorder ("ADHD"), and an anxiety disorder. [Tr. 458]. She described the Plaintiff's symptoms as follows:

> difficulty sleeping, restlessness, feelings of worry, hallucinations and delusions, poor social skills, difficulty verbalizing thoughts, mood instability, verbal aggression, hand flapping, sensory issues, feelings of depression, "explosive anger," emotional outbursts for no apparent reason, difficulty with transitions, repetitive rituals, difficulty making friends, literal thinking, difficulty interpreting sarcasm, overly fascinated by certain topics, not interested in other's side of a conversation, makes inappropriate comments at times, is unaware of his impact on others, interrupts others

6

> frequently, displays poor eye contact, has uneven gross/fine motor skills, fails to give close attention to details, daydreams frequently, loses things, has difficulty sustaining attention, does not follow through on instructions, has difficulty organizing tasks and is easily distracted.

[Id.]. Dr. Dittman submitted that the Plaintiff may require a higher level of care, such as residential treatment, and further opined that "[h]e is severely limited in all areas of functioning." [Id.].

A second letter was written on March 18, 2013, at which point Dr. Dittman had met with the Plaintiff 13 times. [Tr. 468]. Dr. Dittman noted the same diagnoses and associated symptoms as her first letter, but added that the Plaintiff's functioning had gradually improved with treatment. [Id.]. Nonetheless, she opined that "significant concerns and limitations remain and are severe." [Id.].

At step three of the ALJ's decision, the ALJ referenced both letters, noting that Dr. Dittman had diagnosed the Plaintiff with ADHD and an autism spectrum disorder and had opined that the Plaintiff was severely limited in all areas of functioning. [Tr. 16]. The ALJ also discussed the Plaintiff's symptoms as specifically reported by Dr. Dittman. [Id.]. In addition, the ALJ discussed other opinion evidence of record, namely two assessments completed by a school assessment team, two teacher questionnaires, and medical opinions authored by three non-examining, state agency psychologist and one consultative examiner. [Tr. 17-18]. The ALJ assigned "great weight" to the assessments completed by the school team, because "they are consistent with the longitudinal evidence of record," and the teacher questionnaires, because "they were consistent with the report of the school assessment team." [Tr. 18]. In addition, "significant weight" was assigned to the state agency and consultative psychologists "to the degree that they are consistent with the findings herein." [Id.]. The ALJ, however, did not

7

indicate what weight, if any, Dr. Dittman's letters were due. The ALJ concluded that the foregoing opinions demonstrated that the Plaintiff had "none" or "less than marked" limitations in each of the six domains of functioning. [19-24].

As an initial matter, the Court finds that Dr. Dittman's letters constitute medical opinions. "Medical opinions" include statements from physicians and psychologists "that reflect judgments about the nature and severity of" a plaintiff's impairments, including symptoms, diagnosis, and restrictions. 20 C.F.R. 404.1527(a)(2). The Commissioner argues that the letters do not qualify as medical opinions because they do not speak to the nature and severity of the Plaintiff's impairments. [Doc. 19 at 6-7]. On the contrary, the letters reflect Dr. Dittman's judgment that the Plaintiff suffers from ADHD, autism, and anxiety, as well as a host of consequential symptoms, which she cites with generalities, and which, in Dr. Dittman's professional opinion, causes the Plaintiff's functioning to be "severely limited in all areas of functioning." Moreover, the letters were written with the specific intent that they be considered for purposes of the Plaintiff's disability claim. [Tr. 32]. Therefore, the Court finds that Dr. Dittman's letters are medical opinions as defined by the regulations.

Next, the Court must consider whether the ALJ's treatment of Dr. Dittman's letters was appropriate. Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. § 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of

8

relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. § 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

The Court finds the ALJ erred in her treatment of Dr. Dittman's letters. The ALJ failed to specify what weight, if any, she assigned Dr. Dittman's opinion and the reasons for that weight. The ALJ's failure to assign a specific weight to the letters "alone constitutes error." Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011); see also Blakley, 581 F.3d at 408 (holding that "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected"). Moreover, the ALJ's failure to provide an explanation for the weight assigned to the letters is significant. The purpose of the "good reason" rule is to allow claimants to "understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007) (quoting Wilson, 378 F.3d at 544) (internal quotations omitted). Failure to adhere to this fundamental principle hinders a reviewing court from executing meaningful appellate review. Id. The Sixth Circuit Court of Appeals has made clear

9

that courts should not hesitate to remand a case when an ALJ fails to properly apply the treating physician rule. See Wilson 378 F.3d at 545.

A remand, however, is not necessary if the violation of the "good reason" rule is deemed harmless. Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011). Generally, an ALJ's violation of the Social Security Administration's procedural rules is harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. See Wilson, 378 F.3d at 546-47 (stating that "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses" the error may be harmless). With specific regard to a violation of the "good reason" requirement, the error is harmless if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation."

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (citation omitted).

The Commissioner argues that the ALJ's error is harmless under the first two exceptions in Friend. [Doc. 19 at 7-10]. Specifically, the Commission submits that the ALJ's findings were consistent with Dr. Dittman's opinion in that the ALJ agreed that the Plaintiff had severe impairments that created some limitations. [Id. at 8]. The Commissioner also asserts that the Plaintiff's allegation of greater limitations was sufficiently refuted by the ALJ's reliance on the opinions offered in the Plaintiff's school records. [Id.].

As to the Commissioner's first contention, the Court disagrees that the ALJ essentially

10

made findings that were consistent with Dr. Dittman's opinion. Dr. Dittman opined, in both letters, that the Plaintiff was "severely limited in all areas of functioning." This finding is directly at odds with the ALJ's conclusion that the Plaintiff had "none" or "less than marked" limitations in all six domains of functioning [Tr. 19-24].

The Court finds the Commissioner's second contention, however, has merit. More specifically, the Court finds Dr. Dittman's "opinion is so patently deficient that the Commissioner could not possibly credit it." Friend, 375 F. App'x at 551. While Dr. Dittman appears to have established a meaningful treatment relationship with the Plaintiff given that she had met with him 13 times in an eight month period and had began to see improvements [Tr. 468], Dr. Dittman provides little support for her conclusory opinion that the Plaintiff is severely limited in all areas of functioning other than listing symptoms. However, these do not "track" or directly speak to the six domains of functioning. Medical opinions, even those from treating physicians, are not deserving of substantial deference or controlling weight where the opinion is based on insufficient medical data. 20 C.F.R. § 404.1527(c)(3); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). As argued by the Commissioner, the letters only provide vague, conclusory statements regarding the Plaintiff's level of functioning without any clinical support, such as treatment notes, observations, or testing to substantiate or explain how Dr. Dittman arrived at her conclusion. The ALJ had no obligation to credit such conclusory statements. See Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984) ("The Secretary is not bound by a broad conclusory statement of a treating physician in making [a disability] determination."); Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) ("Ultimately, the determination of disability is the prerogative of the Secretary, not the treating physician, and the brief conclusory letter from appellant's treating physician, was not dispositive of the issue."). Accordingly, the

11

lack of accompanying medical or treatment records that could otherwise corroborate Dr. Dittman's opinion essentially renders the opinion meaningless in terms of the degree of functional limitations the Plaintiff actually experienced.

Moreover, the Court finds that Dr. Dittman's opinion cannot be credited because it is inconsistent with other substantial evidence in the record. Among the relevant evidence submitted were school records consisting of teacher questionnaires, psychoeducational evaluations, and other assessments completed by school personnel. [Tr. 129-61; 189-96; 242-302; 479-511]. The Plaintiff's school counselor authored a teacher questionnaire on September 30, 2011, wherein she opined that the Plaintiff had "slight problems" and "obvious problems" with different tasks in all six domains of functioning, except that the Plaintiff had "serious problems" with organizing things and completing homework in the Attending and Completing Tasks domain and a "serious problem" with introducing and maintaining relevant and appropriate topics of conversation in the Interacting and Relating with Others domain. [Tr. 132-37]. The school counselor noted, however, that the Plaintiff had improved since beginning therapy and medication. [Tr. 138].

A June 2011 psychoeducational evaluation was completed by the Plaintiff's school psychologist [Tr. 247-58], wherein intelligence testing demonstrated that the Plaintiff's IQ fell within the average range [Tr. 250] and achievement testing likewise placed the Plaintiff in the average range in all areas [Tr. 251]. However, because the Plaintiff's ADHD and autism characteristics placed him in the "clinically significant" and "at risk" range in behavioral testing [Tr. 251-56], the evaluation recommended that a school assessment team convene to assess whether the Plaintiff needed special education services. [Tr. 257]. Moreover, the evaluation suggested that the Plaintiff would benefit from extended learning time, tests being broken down

12

into manageable parts, and flexible scheduling. [Id.]. An Individual Education Program ("IEP") was created to implement these recommendations. [Tr. 259-73]. Thereafter, the Plaintiff showed improvement in his 2012 Tennessee Comprehensive Assessment Program scores over the prior year, as he scored "proficient" in reading and science, "basic" in math, and "advanced" in social studies. [Tr. 495]. The Plaintiff, however, continued to struggle in the classroom setting, and in October 2012, a Reevaluation Report was also completed by the school psychologist wherein additional recommendations were made to further support the Plaintiff's written expression ability. [Tr. 508-10].

The Plaintiff showed marked improvement following the implementation of the foregoing accommodations. Notably, a second teacher questionnaire was completed on May 14, 2013, by a team of four teachers, all of whom worked with the Plaintiff daily in a regular classroom setting and in the special education program. [Tr. 189-96]. The team opined that the Plaintiff had no limitations in any of the six domains of functioning. [Tr. 190-95]. Moreover, the Plaintiff was on grade level in reading, writing, and math, and there were no problems observed in school. [Tr. 189, 196].

Further, the record contains four additional medical source opinions, all of which fail to opine severe limitations. Three different non-examining, state agency psychologists completed "Childhood Disability Evaluation Forms" in November 2011, December 2011, and March 2012. [Tr. 424-43]. In each evaluation, the agency psychologists opined that based upon a review of the record, the Plaintiff had "no limitation" or "less than marked" limitations in all six domains of functioning [Id.] with the exception of the last state agency psychologist who opined that the Plaintiff had "marked" limitations in the domain of attending and completing tasks based upon reports that the Plaintiff has poor concentration, difficulty completing tasks, and moves at a slow

13

pace [Tr. 440].

A consultative examination was also performed on May 22, 2013, by Tracy Allred, Ed.D. [Tr. 512-20]. Dr. Allred opined more limiting functions due to the Plaintiff's Asperger's disorder, and symptoms caused by his ADHD, depression, and anxiety. [Tr. 515]. While the Plaintiff was assessed with no limitations in his ability to understand and remember, Dr. Allred opined that the Plaintiff was moderately limited in his ability to sustain concentration and persistence, was markedly limited in social interaction, and was moderately to markedly limited in his ability to adapt and tolerate stresses associated with daily activities. [Tr. 515-517]. Even considering Dr. Allred's more limiting opinion, his findings are far less restrictive than those of Dr. Dittman who opined severe limitations in all areas of functioning.

In sum, the Plaintiff's school records and the medical source opinions undermine the supportability and consistency of Dr. Dittman's conclusory opinion. The Plaintiff fails to cite to the Court any evidence within the record that supports Dr. Dittman's opinion. [Doc. 15 at 5-6]. Even Dr. Dittman's second letter indicates Plaintiff's improvement, which appears borne out by the marked improvement shown in the subsequent school records, testing and evaluations, and subsequent medical examinations. Thus, remand is also not warranted as Dr. Dittman's opinion is inconsistent with other substantial evidence in the record.

Accordingly, the Court finds that the ALJ's error for failing to assign a specific weight to Dr. Dittman's opinion, and the reasons for that weight, was harmless. Therefore, the Plaintiff's allegation of error is not-well take.

14

## VI. CONCLUSION

For the reasons stated herein, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 14**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).